IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
RALPH S. LEWIS,                        )
                                       )
                 Plaintiff,            )
                                       )
           v.                          )    1:09CV724
                                       )
NORTH CAROLINA AGRICULTURAL            )
AND TECHNICAL STATE UNIVERSITY;        )
MS. PEGGY OLIPHANT, Director of        )
Veterans and Disability Services       )
at N.C. A&T State University;          )
et al.,                                )
                                       )
                 Defendants.           )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on Defendants' Motion to Dismiss (Docket Entry 10). For the reasons that follow, said motion should be granted.

BACKGROUND

On September 21, 2009, Plaintiff filed a pro se Complaint in this Court, using what appears to be a form document which he then completed by hand. (Docket Entry 2.) In the caption of the Complaint, Plaintiff listed "NC A&T State Univ." and Peggy Oliphant, Director of Veterans and Disability Support Services, as defendants. (Id. at 1.) Subsection B of the form solicits the names of the defendants and contains this heading: "**Notice**: A person must be identified in subsections B and C in order to be considered as a defendant." (Id. (emphasis in original).) In

subsection B, Plaintiff does not list "NC A&T State Univ." (or any variation thereof), but does list Defendant Oliphant, as well as four other individuals (Chancellor James Renick, Dr. Judy Rashid, Chief Richetta Slade, and Dr. Roselle Wilson). (Id. at 1-2.)

Section III of the form asks for the description of Plaintiff's claim(s). (Id. at 2.) The instructions for that section specifically state: "[I]dentif[y] the alleged legal wrong . . . [and] describ[e] how each defendant named in Section II.B. and C. above is personally responsible for depriving you of your rights. Include relevant times, dates, and places." (Id.) Said instructions further direct a plaintiff to "[n]umber and set forth each separate claim in a separate paragraph." (Id.)

In the space that followed on the form, Plaintiff did not set out separately-numbered paragraphs (and largely did not utilize paragraphs at all). Nor did he identify any "alleged legal wrongs" through traditional means, such as the use of headings that named any claim(s) or by reference to statutes. Plaintiff did, however, offer the following allegations of note:

1) Plaintiff "attended A&T State Univ. 2004 Fall" (id.);

2) Plaintiff's medications "caused [him] to be comotose [sic] at times unknown" (id.);

3) "People were afraid [of Plaintiff] for reasons unknown to [him]" (id.);

4) "students stat[ed that Plaintiff engaged in] misbehavior at the Univ. at the time [he] attended," but the statements were "all rumor" (id. at 3);

5) Plaintiff "was discriminated against because of [his] disability" (id.);

6) "[Defendant] Oliphant just assumed to cause [Plaintiff] problems and [his] dismissal whereby she should not and was [sic] a clear act of discrimination for it was her job to help [Plaintiff] not hender [sic] [him]" (id.).

Other than listing them as defendants, the Complaint does not mention the four individual defendants other than Defendant Oliphant. (Id. at 1-4.) In the final subsection of the form (which calls for the relief requested), it appears that Plaintiff seeks only money damages. (Id. at 4.) Finally, Plaintiff attached two documents to his form Complaint, a letter on letterhead of the North Carolina A&T State University ("the University"), dated September 10, 2004, from Defendant Wilson (in her capacity as Vice Chancellor for Student Affairs) to Plaintiff (id. at 5-6)[1] and what appears to be a collection notice directed to Plaintiff from the United States Department of Education (id. at 7).

---

[1] The names of Defendants Renick, Rashid, Slade, and Oliphant appear at the end of the letter as recipients of courtesy copies (as do the names of two other individuals who are neither identified as defendants, nor mentioned anywhere in the Complaint). (Id. at 6.)

-3-

The letter Plaintiff attached to the Complaint sets out the following items of interest:

1) the University received a report that Plaintiff "demonstrat[ed] erratic behavior" (id. at 5);

2) the University received a report that Plaintiff "act[ed] in a suspicious manner by going in and out of the administrative building" (id.);

3) the University received a report that Plaintiff "caus[ed] a major disruption within one of the [University's] offices" (id.);

4) a professor reported that Plaintiff "ramble[d] on and on in an incoherent manner" (id.);

5) Plaintiff advised Defendant Oliphant that Plaintiff was "diagnosed with paranoid schizophrenia and bi-polar and ha[d] not taken [his] medicine in two (2) weeks and [that he] d[id]n't like taking [his] medicine because it makes [him] very sleepy, almost comatose" (id.); and

6) the University was suspending Plaintiff due to "misconduct violat[ing] community standards of behavior to the degree that it jeopardize[d] the safety of the university and interfere[d] with educational interests" (id. at 6).[2]

---

[2] Two sentences from Plaintiff's response to Defendants' Motion to Dismiss may reveal a bit more about the situation the University faced: "Because of the wild actions and horse play I witnessed by the marching band of A&T University, I felt the need to carry a bamboo stick. I carried this stick not to be violent subsequently [sic] just to feel secure for being around such violent youth." (Docket Entry 13 at 1.)

-4-

The University and all five individual defendants moved to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. (Docket Entry 10.) Plaintiff filed a response. (Docket Entry 13.)

DISCUSSION

Defendants present four different grounds for dismissal of the various aspects of this action:

1) Plaintiff's failure to allege that he exhausted his administrative remedies with the Equal Employment Opportunity Commission ("EEOC") requires dismissal for lack of subject matter jurisdiction of his disability discrimination claim (to the extent Plaintiff proceeds under the Americans with Disabilities Act ("ADA")) (Docket Entry 11 at 3-4);

2) Plaintiff's failure to allege that he pursued an administrative claim with the EEOC within 180 days of his suspension from the University time-bars his disability discrimination claim (to the extent Plaintiff proceeds under the ADA) (id. at 4-5);

3) Plaintiff cannot maintain a claim for damages under the ADA against the individual defendants (id. at 5); and

4) Any claim by Plaintiff under 42 U.S.C. § 1983 would be time-barred (id. at 5-6).

-5-

As noted above, Plaintiff's Complaint does not set out separate claims in any discernable way, nor does it identify any claim(s) by heading or statutory reference. However, given that, in the body of his Statement of Claim, Plaintiff has alleged that Defendants discriminated against him based on a disability, Defendants' identification of the ADA and Section 1983 as possible statutory grounds for Plaintiff's claim(s) makes sense.

"The [ADA] prohibits discrimination against persons with disabilities in three major areas of public life: employment, under Title I, public services, under Title II, and public accommodations, under Title III." A Helping Hand, LLC v. Baltimore County, Md., 515 F.3d 356, 361 (4th Cir. 2008) (internal citations omitted).[3] As a result, at least on its face, the ADA provides a possible cause of action for Plaintiff. "To state a claim under § 1983, a plaintiff must aver that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 (4th Cir. 2009). Accordingly,

---

[3] The ADA built upon another federal statute of more limited reach, the Rehabilitation Act. See Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995). Plaintiff's Complaint does not allege facts that would bring his case within the scope of the Rehabilitation Act; moreover, even if Plaintiff could add such allegations, because "[t]he two Acts share the same definitions of disability . . . [and] contain the same operative language about discrimination," Rogers v. Department of Health and Envtl. Control, 174 F.3d 431, 433 (4th Cir. 1999) (internal citations omitted), and both incorporate "the remedies, procedures, and rights of Title VII," Hockaday v. Brownlee, 370 F. Supp. 2d 416, 421 (E.D. Va. 2004), with the only significant difference between the two being that the ADA contains a less demanding causation element than does the Rehabilitation Act, see Baird ex rel. Baird v. Rose, 192 F.3d 462, 468-70 (4th Cir. 1999), no reason exists to analyze this case separately under the Rehabilitation Act.

because federal law prohibits discrimination based on disability (via the ADA and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution) and Plaintiff has alleged that employees of a state institution engaged in such unlawful action, Section 1983 also represents a possible basis by which Plaintiff might proceed.[4]

Although the ADA and Section 1983 afford potential grounds for a plaintiff to litigate disability discrimination claims of the sort to which Plaintiff adverted in his Complaint, Defendants correctly identify defects which preclude those claims from going forward in this Court under the circumstances presented. The Court will discuss each deficiency in turn.

First, as Defendants note, this Court lacks subject matter jurisdiction over any claim by Plaintiff under the ADA because, by failing even to initiate a complaint with the EEOC, Plaintiff has

---

[4] The Equal Protection Clause prohibits state actors from subjecting individuals with disabilities to treatment that lacks any rational relationship to a legitimate state interest. See generally Brown v. North Carolina Div. of Motor Vehicles, 166 F.3d 698, 706-07 (4th Cir. 1999); Doe v. University of Md. Med. Sys. Corp., 50 F.3d 1261, 1267 (4th Cir. 1995). The Court only has assumed for purposes of this Memorandum Opinion and Recommendation that a plaintiff alleging disability discrimination under color of state law may proceed under Section 1983 and does not render any ultimate judgment on that complex question. See Mitchell v. Yates, 402 F. Supp. 2d 222, 230 n.7 (D.D.C. 2005) (noting divergent authority bearing on issues of whether and to what extent Section 1983 provides cause of action to plaintiff claiming disability discrimination, including whether any such claim could rest upon statutory ADA violation or must assert equal protection breach and whether comprehensive nature of ADA forecloses any resort to Section 1983 (even for purposes of asserting equal protection claim). The divergent conclusions reached by the Fourth Circuit as to the availability of Section 1983 as a complement to claims under Title VII (yes, see Beardsley v. Webb, 30 F.3d 524 (4th Cir. 1994)) and the Age Discrimination in Employment Act (no, see Zombro v. Baltimore City Police Dep't, 868 F.2d 1364 (4th Cir. 1989)) underscores the challenge such an inquiry would pose.

failed to exhaust his administrative remedies. "'[F]ederal courts are courts of limited jurisdiction,' constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998) (quoting Owen Equip. and Erection Co. v. Kroger, 437 U.S. 365, 374 (1978)). The party invoking the jurisdiction of the Court, here Plaintiff, "has the burden of proving the existence of subject matter jurisdiction." Jones v. American Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). Moreover, "[t]he existence of subject matter jurisdiction is a threshold issue, which this [C]ourt must address before addressing the merits of [an] ADA claim." Id.

Moving pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants assert that because "Plaintiff has failed to allege that he filed any charge with the EEOC . . . his claim . . . must be dismissed for lack of subject matter jurisdiction." (Docket Entry 11 at 4.) Defendants' motion in this regard springs from the requirement that, "[b]efore bringing a civil suit for an ADA violation, the aggrieved party must file a charge with the EEOC." Davis v. Virginia Commonwealth Univ., 180 F.3d 626, 628 n.3 (4th Cir. 1999). Accord Spencer v. Ashcroft, 147 Fed. Appx. 373, 375 (4th Cir. 2005) ("The ADA . . . follows the 'powers, remedies and procedures' set forth in Title VII of the Civil Rights Act of 1964, as amended. Thus, like a Title VII plaintiff, [an ADA plaintiff]

[i]s required to exhaust [his/her] administrative remedies before instituting a lawsuit." (internal citation omitted)).[5] In the past, "[t]his requirement [has been] variously referred to as a jurisdictional prerequisite to adjudication in the federal courts, a procedural prerequisite to bringing suit, and a requirement that a claimant exhaust administrative remedies." Sloop v. Memorial Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999).

Recently, the United States Court of Appeals for the Fourth Circuit has clarified that "a failure by the plaintiff to exhaust administrative remedies concerning a [discrimination] claim deprives the federal courts of subject matter jurisdiction over the claims." Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 & n.2 (4th Cir. 2009) (discussing Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982), in distinguishing between "failure" to exhaust administrative remedies – which gives rise to a jurisdictional bar – and "untimeliness" of administrative action – which creates only a procedural bar). Accord Shepard v. Lowe's Food Stores, Inc., No. 1:08CV679, 2009 WL 4738203, at *2 (M.D.N.C. Dec. 7, 2009) (unpublished). Moreover, whatever nomenclature courts previously

---

[5] "Congress intended the exhaustion requirement to serve the primary purposes of notice and conciliation." Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005). In addition, by "placing primary enforcement responsibility in the administrative process," Congress sought to avoid creating a system in which enforcement efforts would "always be tied to the ponderous pace of formal litigation, with the result that victims of discrimination are forced to wait while injustice persists." Id. (internal quotation marks omitted). "Moreover, the EEOC undertakes detailed investigations into potential discrimination claims before any suit is filed, both preserving judicial economy and helping prospective plaintiffs build their case." Id. (internal citation omitted).

-9-

have used to describe the nonexhaustion inquiry, the substantive implications of the EEOC exhaustion requirement have remained clear: if a plaintiff fails to present a discrimination claim in an "administrative complaint, [a federal court] cannot analyze the merits of [the plaintiff's unexhausted] discrimination claims." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 (4th Cir. 2002).

Generally, "a district court should grant [a] Rule 12(b)(1) motion to dismiss only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks omitted). In this case, neither in his Complaint, nor in his response to Defendants' Motion to Dismiss, did Plaintiff offer any suggestion that he ever filed a disability discrimination charge with the EEOC, much less that he exhausted his administrative remedies.[6] Under these circumstances, dismissal of any ADA claim for lack of subject matter jurisdiction is appropriate. See, e.g., Clapp v. Potter, No. 1:06CV1070, 2007 WL 5187891, at *2 (M.D.N.C. Aug. 9, 2007) (unpublished) ("In the Complaint, [the plaintiff] does not assert that she . . . has filed an EEOC complaint alleging [discrimination]. . . . There is no indication that [the plaintiff] has exhausted her administrative

---

[6] Indeed, Plaintiff's response does not address the issue of subject matter jurisdiction at all. (See Docket Entry 13 at 1-2.)

-10-

Case 1:09-cv-00724-WO-LPA   Document 14   Filed 04/21/10   Page 10 of 16

remedies with respect to that [discrimination] claim. Therefore, [the plaintiff's] [discrimination] claim must be DISMISSED.").[7]

Finally, Defendants argue that, "[t]o the extent that one could interpret Plaintiff's claims against the individual Defendants as constitutional claims under 42 U.S.C. § 1983, the applicable statute of limitations would bar such claims." (Docket Entry 11 at 5-6.)[8] "The raising of the statute of limitations as a bar to [a] cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint." Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005).

---

[7] As noted at the beginning of this section, Defendants also contend that, because Plaintiff failed to file a disability discrimination charge with the EEOC during the 180-day period following his suspension from the University, "this claim should be dismissed as untimely." (Docket Entry 11 at 5.) Although Defendants certainly are correct that, for a discrimination claim of the sort contemplated by Plaintiff, "[t]he EEOC charge must be filed within 180 days of the occurrence of the allegedly discriminatory conduct," Jenkins v. Trustees of Sandhills Community College, 259 F. Supp. 2d 432, 441 (M.D.N.C. 2003), because the Court lacks jurisdiction to consider any ADA claim brought by Plaintiff, addressing this non-jurisdictional, procedural bar seems imprudent. Defendants also rightly note that Plaintiff cannot proceed against the individual defendants under the ADA. See Baird ex rel. Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999) (holding that, because ADA incorporates relevant provisions of Title VII, ADA does not permit damage claims against individual defendants); Swaim v. Westchester Academy, Inc., 170 F. Supp. 2d 580, 583 (M.D.N.C. 2001) ("[I]ndividual defendants do not face personal liability under the [ADA]."). Again, however, given this Court's lack of jurisdiction over any ADA claim, the better course would be to refrain from making a merits-based ruling of that sort.

[8] Defendants properly focus on Section 1983 as a possible cause of action against only the individual defendants because, to the extent Plaintiff has named the University as a defendant, he could not maintain a damages action against the University under Section 1983. Googerdy v. North Carolina Agric. and Technical State Univ., 386 F. Supp. 2d 618, 622 (M.D.N.C. 2005) ("The Supreme Court, in interpreting § 1983, has held that 'neither a State nor its officials acting in their official capacities are 'persons' under § 1983.' Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). This holding necessarily excludes A & T, as an alter ego of the State of North Carolina, from liability under § 1983." (internal parallel citation omitted)).

-11-

In assessing whether a complaint facially shows the time-barred nature of a claim therein, the Fourth Circuit has held that courts should look to documents attached to the complaint:

> <u>Attached to the complaint 'and incorporated herein by reference' are copies of the construction contract and the performance bond</u>. We assume then, as did the district court, that <u>the exhibits to the complaint are a part of the complaint</u> which was subject to the motion to dismiss under Rule 12(b)(6) as filed by the surety. Rule 10(c), Fed. R. Civ. P. Since Rule 9(f) provides that allegations of time and place are material 'for the purpose of testing the sufficiency of a pleading,' 2A Moore's Federal Practice, ¶ 12.10 at 12-85, we conclude that <u>the district court could consider the provisions of the contract and the terms of the performance bond in determining whether the complaint, on its face, demonstrates as a certainty that the claim is barred by the applicable limitation period</u>. Indeed, in the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed. R. Civ. P., the exhibit prevails. 2A Moore's Federal Practice, ¶ 10.06, p. 10-24.

<u>Fayetteville Investors v. Commercial Builders, Inc.</u>, 936 F.2d 1462, 1465 (4th Cir. 1991) (emphasis added). <u>See also</u> <u>Espejo v. George Mason Mortgage, LLC</u>, No. 1:09CV1295 (JCC), 2010 WL 447009 (E.D. Va. Feb. 2, 2010) (unpublished) (noting authority, based on Fed. R. Civ. P. 10(c), to "consider documents attached to the Complaint" in ruling that "affirmative defense of statute of limitations appear[ed] on the face of the Complaint and attached exhibits"); <u>Wilkerson v. Thrift</u>, 124 F. Supp. 2d 322, 328 (W.D.N.C. 2000) (looking to "exhibit attached to the amended complaint" in determining that statute of limitations barred claim).

-12-

A three-year statute of limitations applies to Section 1983 claims predicated on federal constitutional and statutory violations allegedly committed in North Carolina. National Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1161-62 (4th Cir. 1991) ("Because there is no federal statute of limitations applicable to suits under § 1983, it is the rule that the applicable provision limiting the time in which an action under § 1983 must be brought, must be borrowed from the analogous state statute of limitations. . . . [W]e agree that a three-year limitations period is applicable, . . . [as] supplied by G.S.N.C. § 1-52(5), relating to personal injury actions . . . ." (internal quotation marks omitted)). Accordingly, if Plaintiff's Complaint (including the attachments thereto) reflect that his claim for disability discrimination arose more than three years prior to the filing date of this action on September 21, 2009, any claim he might have under Section 1983 would fail as a matter of law.

As quoted above in the Background Section, notwithstanding the instructions on the form Plaintiff used (that directed him to "[i]nclude relevant times, dates, and places" in the Statement of Claim), the Complaint does not associate a date directly with the conclusory allegation that Plaintiff "was discriminated against because of [his] disability." (Docket Entry 2 at 2.) However,

-13-

that statement must be read in the context of other parts of the Complaint and the attachments thereto; specifically:

1) the only date reference in the Statement of Claim, i.e., that Plaintiff "attended A&T State Univ. 2004 Fall" (id.);

2) Plaintiff's allegation in the Statement of Claim that "[Defendant] Oliphant just assumed to cause me problems and <u>my dismissal</u> whereby she should not and was [sic] an <u>act of discrimination</u>" (id. (emphasis added));

3) Plaintiff's request for "financial reprive [sic]" in his prayer for relief (id. at 4), combined with his attachment of the Department of Education collection notice (id. at 7); and

4) Plaintiff's attachment of Defendant Wilson's letter to him dated September 10, 2004, suspending him from the University (id. at 5-6).

Together, these elements of the Complaint establish that Plaintiff proposes to litigate a claim of disability discrimination related to his suspension from the University and thus that any cause of action under Section 1983 arose on or about September 10, 2004,[9] far more than three years before he instituted this action.

---

[9] "[E]ven though the limitation period is borrowed from state law, the question of when a cause of action accrues under 42 U.S.C. § 1983 remains one of federal law. Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." <u>Nasim v. Warden, Md. House of Correction</u>, 64 F.3d 951, 955 (4th Cir. 1995). Setting the date of the letter in question as the approximate date on which Plaintiff's cause of action arose accords with rulings other federal courts have reached in analogous contexts, including the Fourth Circuit (albeit in an unpublished decision). See, e.g., <u>Moran Vega v. Cruz Burgos</u>, 537 F.3d 14, 20 (1st Cir. 2008) ("The clock thus began running, for
(continued...)

Accordingly, the face of Plaintiff's Complaint (and the attachments thereto) make clear that the applicable statute of limitations bars any claim Plaintiff might have asserted under Section 1983 for disability discrimination. Such claim(s) thus should be dismissed under Federal Rule of Civil Procedure 12(b)(6).[10]

---

[9](...continued) purposes of section 1983, when [the plaintiff] received the letter notifying him of his suspension on December 3."); Battle v. Morrison, 139 F.3d 887, 1998 WL 116169, at *2 (4th Cir. Mar. 17, 1998) (unpublished) ("[The defendant]'s April 4, 1994, letter clearly advised [the plaintiff] of the pending suspension of her bonding license. Thus, [the plaintiff's] claim accrued on that date, when her injuries were ascertainable and actionable.").

[10] Plaintiff's response to Defendants' Motion to Dismiss offers no comprehensible argument on this statute of limitations issue, but instead references the issue only as follows: "The statue [sic] of limitations without my knowledge has me ridden in extreme turmoil, emotionally, mentally and spiritually." (Docket Entry 13 at 1.) He also describes his response in general as a "rebuttal to the dismissal of civil action whereby the complexities of law to perform this action I was not aware of." (Id.) In the interest of affording Plaintiff the broadest possible reading of his pro se filing, see generally Erickson v. Pardus, 551 U.S. 89, 94 (2007) (reiterating that "[a] document filed *pro se* is to be liberally construed" (internal quotation marks omitted)), the Court will construe the foregoing statements as requesting equitable relief from the statute of limitations. The Fourth Circuit has held that "any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000). See also Olson v. Mobil Oil Corp., 904 F.2d 198, 201 (4th Cir. 1990) ("Courts cannot countenance ad hoc litigation for every missed deadline. . . . At some point, the right to be free of stale claims comes to prevail over the right to prosecute them." (internal ellipses and quotation marks omitted)). "The circumstances under which equitable tolling has been permitted are therefore quite narrow." Chao v. Virginia Dep't of Transp., 291 F.3d 276, 283 (4th Cir. 2002) (delimiting grounds for equitable relief from limitations periods to "situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass . . . [or] when extraordinary circumstances beyond plaintiff's control made it impossible to file the claims on time" (internal quotation marks omitted)). Because Plaintiff's response does not identify circumstances that would bring him within any of these circumscribed safe-harbors, the statute of limitations controls. Nor does the fact that Plaintiff asserted, in his response to Defendants' Motion to Dismiss, that he "now suffer[s] from emotional turmoil and educational depravity" (Docket Entry 13 at 2 (emphasis added)), allow him to defeat Defendants' statute of limitations defense. "To do so would upset the balance struck by the limitations period between the reasonable needs of individual claimants and the public interest in finality. 'A continuing wrong theory should not provide a means of relieving a
(continued...)

## CONCLUSION

Plaintiff's failure to exhaust his administrative remedies by pursuing his disability discrimination claim with the EEOC deprives this Court of subject matter jurisdiction over any ADA claim stated in Plaintiff's Complaint. Further, Plaintiff's Complaint and attachments thereto reveal that any Section 1983 claim stated in his Complaint falls outside the three-year limitations period following his accrual of such cause of action. Accordingly, the Court should grant Defendants' Motion to Dismiss (Docket Entry 10).

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion to Dismiss (Docket Entry 10) be **GRANTED** and that this action be **DISMISSED**.

                                        /s/ L. Patrick Auld
                                        **L. Patrick Auld**
                              **United States Magistrate Judge**

April 21, 2010

---

[10](...continued)
plaintiff from its duty of reasonable diligence in pursuing its claims.'" Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180, 189 (4th Cir. 1999) (quoting National Advertising, 947 F.2d at 1168) (internal brackets omitted) (ruling that, where plaintiff "cite[d] no discrete acts of discrimination that fall within the limitations period," but instead referenced "continual ill effects" from defendants' conduct, such matters "do[] not revive the limitations period for the original [allegedly discriminatory] decision").